UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MORGAN KOSIBA,**<br>Plaintiff,<br>**v.**<br><br>**DENTAL ASSOCIATES, PC,**<br>Defendant. | **2:24-CV-12069-TGB-EAS**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 12)** |

Plaintiff Morgan Kosiba brings this action against her former employer, Dental Associates, PC, doing business as Redwood Dental, asserting claims for gender discrimination and sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL §§ 37.2101, *et seq.*; retaliation under those statutes; hostile work environment under ELCRA; and wrongful discharge in violation of Michigan public policy. ECF No. 1. Now before the Court is Defendant's Motion for Summary Judgment, ECF No. 12, which the Court **GRANTS**.

## I. BACKGROUND

The following facts are undisputed, unless otherwise noted.

Plaintiff Morgan Kosiba began working for Defendant Dental Associates, PC, as a dental assistant in August 2021. ECF No. 12-1, PageID.84; ECF No. 14, PageID.393.

Defendant is a dental services company located in Michigan. ECF No. 12-1, PageID.84; ECF No. 14, PageID.393. Defendant had approximately 25 offices and 200 employees during the relevant period. ECF No. 12-1, PageID.84; ECF No. 14, PageID.393. Defendant maintained a management services agreement with Redwood MSO, a dental services organization which provided Defendant management services, including centralized human resources services (HR), training, and hiring and firing of Defendant's employees. ECF No. 12-1, PageID.84; ECF No. 14, PageID.393.

Plaintiff worked as a "travelling assistant" for Dr. Hussain Arbab, meaning she worked at different offices on different days. ECF No. 12-1, PageID.85; ECF No. 14, PageID.394.

During her employment, Plaintiff became personally involved with two dentists employed by Defendant, Dr. David Juliani and Dr. Michael Jack. ECF No. 12-1, PageID.84; ECF No. 14, PageID.393. Neither dentist was Plaintiff's supervisor, and she did not work directly with either of them. ECF No. 12-1, PageID.85; ECF No. 14, PageID.394.

Plaintiff maintained a texting relationship with Dr. Jack between May 2022 and March 2023, which Plaintiff described as consisting of "on and off sexual communication through Instagram. Pictures, videos, sexting of situations" and "personal discussions about work, home life, kids, relationship." ECF No. 12-1, PageID.85; ECF No. 14, PageID.394. Plaintiff and Dr. Jack never dated in person. ECF No. 12-1, PageID.85; ECF No. 14, PageID.394. Plaintiff and Dr. Jack exchanged flirtatious messages and Plaintiff sent Dr. Jack numerous pictures and videos in which she is naked or engaged in sexual behavior. ECF No. 12-1, PageID.85; ECF No. 14, PageID.394.

Plaintiff's relationship with Dr. Juliani ran from approximately December 10, 2022 until March 10, 2023. ECF No. 12-1, PageID.86; ECF No. 14, PageID.395. Plaintiff and Dr. Juliani "met up" and their relationship "evolved into seeing each other regularly and became sexually intimate." ECF No. 12-1, PageID.85–86; ECF No. 14, PageID.394. Plaintiff sent Dr. Juliani naked pictures of herself. ECF No. 12-1, PageID.86; ECF No. 14, PageID.396. Their sexual relationship was at all times consensual. ECF No. 12-1, PageID.86; ECF No. 14, PageID.396.

In her responses to Defendant's Requests for Admission, Plaintiff made the following binding admissions:

> REQUEST NO. 4: Admit that you never reported the conduct alleged in your Complaint to Defendant.

> RESPONSE: Admit
>
> …
>
> REQUEST NO. 6: Admit that your sexual relationship with Dr. Juliani was at all times consensual for both parties.
> RESPONSE: Admit
>
> …
>
> REQUEST NO. 8: Admit that you welcomed any sexual advances by Dr. Juliani.
> RESPONSE: Admit
>
> …
>
> REQUEST NO. 10: Admit that you did not resist a sexual relationship with Dr. Juliani.
> RESPONSE: Admit
>
> …
>
> REQUEST NO. 11: Admit that you did not resist having a sexual relationship with Dr. Jack.
> RESPONSE: Admit
>
> …
>
> REQUEST NO. 14: Admit that you were not harassed in the workplace by anyone during your employment with Defendant.
> RESPONSE: Admit

ECF No. 12-7, PageID.245–46.

Notwithstanding these admissions, Plaintiff maintains that she felt pressured to continue the relationships. ECF No. 14, PageID.399–400. Defendant responds that the relationships were consensual and that neither dentist "imposed or threatened any job consequences tied to sexual conduct." ECF No. 12-1, PageID.89.

Defendant terminated Plaintiff's employment in early April 2023, roughly one month after her relationship with Dr. Juliani ended. ECF No. 12-1, PageID.87; ECF No. 14, PageID.396. Defendant had no policy

prohibiting workplace romantic or sexual relationships. ECF No. 12-1, PageID.87; ECF No. 14, PageID.396–97.

Plaintiff claims that Redwood MSO's HR department "presented Plaintiff with a nondisclosure agreement to not speak about the relationship with Dr. Jack and Dr. Juliani in exchange for payment, which Plaintiff declined." ECF No. 14, PageID.407. In support, Plaintiff cites to her own deposition where she testified that during the termination meeting, HR "wanted me to sign this nondisclosure that I would not speak of the relationship, that they were going to give me a certain amount of pay … and I still didn't sign that." ECF No. 12-5, PageID.150.

The parties dispute the reason for the termination. Defendant states that the basis for "the termination was disruptive and inappropriate behavior by Plaintiff in the Troy office." ECF No. 12-1, PageID.87. Specifically, Defendant contends that Toni Sakcriska, Plaintiff's supervisor,

> reported to Defendant's HR department that (1) Plaintiff had circulated the false story in the Troy office that Dr. Jack had flown Plaintiff down to Florida for vacation, and that the two were dating; (2) Plaintiff had created a disturbance when Dr. Jack's girlfriend visited the office for a dental procedure, to the extent that Sakcriska had to ask Plaintiff to leave the office while she was there, and (3) Plaintiff had written inappropriately personal notes on Dr. Jack's coffee mug.

*Id.*

Defendant states that the decision to terminate Plaintiff's employment was made by HR Manager Karla Ruegsegger and Chief People Officer Todd Gustke, both members of Redwood MSO's HR team. *Id.* at PageID.88. Defendant further contends that neither Dr. Jack nor Dr. Juliani was involved in the decision. *Id.*

Plaintiff, on the other hand, "denies that any of these situations ever happened, and [that] she never met Dr. Jack's girlfriend." ECF No. 14, PageID.398. Plaintiff contends that "[t]he investigation surrounding Plaintiff's termination was primarily verbal, with no written documentation produced or maintained." *Id.* Plaintiff "testified … that the reason given to her for her termination was sexual harassment based on sending pictures and videos, but they would not tell her who complained." *Id.*

Plaintiff contends that her relationship with Dr. Juliani was "a factor in her termination." *Id.* at PageID.397. Plaintiff argues that the timing of her termination and Dr. Juliani's comments that one of them would have to leave the practice if their relationship ended "shows that the relationship with Juliani was a factor in her termination." *Id.*

The parties dispute what Defendant's HR decisionmakers knew at the time of the termination. Defendant contends that its HR department "was not aware of any personal relationship between Plaintiff and either Dr. Jack or Dr. Juliani" when it approved the termination. ECF No. 12-1, PageID.88. In support, Defendant points to the deposition of Chief

People Officer Todd Gustke, Defendant's 30(b)(6) witness. *Id.* Gustke was asked whether there "was … any knowledge that there was a consensual relationship, intimate relationship amongst these doctors with Ms. Kosiba?" ECF No. 12-9, PageID.367. Gustke responded "Not – not that I'm aware of, or – not that I was aware of." *Id.*

Plaintiff denies this. ECF No. 14, PageID.399. In support, Plaintiff points to testimony of Dr. Juliani who testified that sometime during the end of March 2023 or the beginning of April 2023, he "received a phone call from our HR department after the relationship had ended stating that she had communicated to other employees that we were seeing each other, and they just needed some more information on that." ECF No. 14-1, PageID.431. Dr. Juliani also testified that during that call, he informed the HR department "that we had a brief period where we dated each other and saw each other and that had ended at that point." *Id.* at PageID.432. Plaintiff also points to testimony from Dr. Jack and Dr. Juliani, who each recounted a phone call in which Dr. Jack told Dr. Juliani that he had been "approached by human resources asking if there was a relationship going on between Dr. Giuliani [sic] and Morgan [Kosiba]." ECF No. 14-2, PageID.549; ECF No. 14-1, PageID.450.

Plaintiff initiated suit on August 7, 2024. ECF No. 1. In her complaint, Plaintiff alleges following counts: (I) "Gender/Sexual Harrasment [sic]/Discrimination" in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*; (II) "Gender/Sexual

Harrasment [sic]/Discrimination" in violation of the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), MCL §§ 37.2101, *et seq.*; (III) Retaliation in violation of Title VII; (IV) Retaliation in violation of ELCRA; (V) "Hostile Workplace Environment" in violation of ELCRA; (VII) [1] Wrongful Discharge in violation of Michigan public policy." *Id.*

On January 23, 2026, Defendant moved for summary judgment on each of Plaintiff's claims. ECF Nos. 12, 12-1. Plaintiff has responded, ECF No. 14, and Defendant has replied, ECF No. 16.

On July 29, 2026, the Court held a hearing on this matter.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); see also Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under governing law. See *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the

[1] Plaintiff's Complaint contains no Count VI, proceeding directly from Count V to Count VII. ECF No. 1, PageID.10. The Court retains Plaintiff's numbering to remain consistent with the parties' briefing.

light most favorable to the non-moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Instead, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252. For the Court to grant summary judgment, the evidence cannot be such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## III. ANALYSIS

Defendant moves for summary judgment on each of Plaintiff's counts. *See* ECF No. 12-1. The Court addresses each count in turn.

### 1. Counts I, II, and V

Counts I and II are titled in the Complaint as claims for "Gender/Sexual Harrasment [sic]/Discrimination" in violation of Title VII and in violation of state law. ECF No. 1, PageID.4–5. Count V brings a claim for "Hostile Workplace Environment" in violation of ELCRA. *Id.* at PageID.8–9.

Defendant treats Counts I and II as bringing claims for gender harassment, sexual harassment, and hostile-work-environment sexual harassment. ECF No. 12-1, PageID.92. Defendant argues that Plaintiff has failed to create a triable issue of fact on three elements it identifies as common to each of these theories: "(1) evidence of 'unwelcome' conduct; (2) evidence of harassment or a hostile work environment, and (3) evidence that the offending conduct was reported to the Defendant." *Id.* Defendant also argues that Count V "is subsumed within the claims set forth in Counts I and II" and relies on its analysis of those counts. ECF No. 12-1, PageID.102.

Plaintiff's response does not defend any gender harassment, sexual-harassment, or hostile-work-environment theories. In fact, the response refers to "harassment" or "hostile work environment" only in restating the issues presented, ECF No. 14, PageID.391, acknowledging Plaintiff's

admission "that she did not report 'harassment' as alleged in her Complaint," *see*, *e.g.*, *id.* at PageID.392, and in referencing her factual claim that "she was told she was being fired for sexual harassment," *see*, *e.g.*, *id.* at PageID.406.

Nor does Plaintiff's response engage with the elements of the harassment/hostile-work-environment theories: the argument section of Plaintiff's response does not address Defendant's arguments that Plaintiff was not subject to unwelcome conduct; that Plaintiff was not harassed or subjected to a hostile work environment; or that Plaintiff did not report any alleged misconduct. *See* ECF No. 14, PageID.402–409.

Instead, the response states that the "claims that remain supported by the record" are "discriminatory discharge and retaliation under Title VII and ELCRA." ECF No. 14, PageID.392. Indeed, Plaintiff's response brief argues only that Plaintiff can establish a *prima facie* case of discrimination. *See* ECF No. 14, PageID.404.

Defendant argues that as a result, "Plaintiff has … abandoned Counts I, II and V of her Complaint." ECF No. 16, PageID.610.

"[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013); *Colston v. Cleveland Pub. Libr.*, No. 12-204, 2012 WL 3309663, at *2 n.2 (N.D. Ohio Aug. 13, 2012) ("Colston did not respond or even mention this claim in her oppositions to Defendants' motions for summary judgment. The

Court therefore concludes that Colston has abandoned that claim and grants Defendants' motions for summary judgment on Colston's Fifth and Fourteenth Amendment claim."), *aff'd*, 522 F. App'x 332 (6th Cir. 2013).

Because Plaintiff has failed to defend any harassment or hostile-work-environment theories in her response to Defendants' motion for summary judgment and has instead acknowledged that the "claims that remain supported by the record" are "discriminatory discharge and retaliation," ECF No. 14, PageID.392, it is correct that Plaintiff has abandoned any theories of gender harassment, sexual harassment, or hostile-work-environment.

Accordingly, to the extent Counts I and II assert gender harassment, sexual harassment, or hostile-work-environment theories, they are deemed abandoned. Count V, which asserts only a hostile-work-environment theory, is abandoned in its entirety.

If considered on the merits, Plaintiff's gender harassment, sexual harassment, and hostile-work-environment theories would nevertheless fail.[2] Those theories require that the employer have either actual or constructive notice of the harassment or of the hostile work environment and fail to take prompt and adequate remedial action. *See Kalich v. AT*

[2] As the parties recognize, ECF No. 12-1, PageID.90 n.2; ECF No. 14, PageID.404, claims under ELCRA are analyzed under the same framework as claims under Title VII. *See Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482, 488 (6th Cir. 2020).

*& T Mobility, LLC*, 679 F.3d 464, 474 (6th Cir. 2012) ("The final element of the *prima facie* case for hostile work environment sexual harassment requires the plaintiff to establish that the employer had either actual or constructive notice of the hostile work environment and failed to take prompt and adequate remedial action."); *Doe v. City of Detroit, Michigan*, 3 F.4th 294, 301 (6th Cir. 2021) ("when [the harassment is] committed by a coworker, the employer is liable only if it knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." (cleaned up)). Plaintiff, however, has admitted that she never reported any conduct alleged in the Complaint to Defendant. ECF No. 12-7, PageID.245. Nor does Plaintiff point to any evidence that Defendant knew or should have known of any facts suggesting that Plaintiff was harassed or faced a hostile workplace.[3] For this reason alone, the complaint fails to establish a *prima facie* case of harassment or hostile workplace.

What remains is Plaintiff's contention that Counts I and II state a discrimination claim that survives summary judgment. *See* ECF No. 14, PageID.404 (citing the elements of a discrimination claim); *id.* at PageID.392 ("claims that remain supported by the record" are "discriminatory discharge and retaliation"). Plaintiff describes her

[3] During the July 29, 2026 hearing, Plaintiff's counsel argued that Defendant knew that Plaintiff was in relationships with the doctors. However, knowledge that Plaintiff was in a relationship with the doctors does not amount to knowledge of harassment or a hostile workplace.

discrimination claim as being based on the allegation that "Defendant terminated Plaintiff not for any legitimate policy violation, but because Defendant learned Plaintiff had personal relationships with dentists and decided to remove the female assistant as the 'problem.'" ECF No. 14, PageID.405. Similarly, at the July 29, 2026 hearing, Plaintiff's counsel argued for the first time that Plaintiff's termination constituted sexual harassment—a theory sounding in discriminatory discharge.

Indeed, the Complaint could plausibly be read to plead a discriminatory discharge claim. Specifically, the headers of Counts I and II mention "discrimination," *see* ECF No. 1, PageID.4–5, and the Complaint contains following allegations: "Plaintiff was subjected to communication or conduct on the basis of her gender, as indicated in the facts above," *id.* at PageID.4–6, and that "Plaintiff's male counterparts were treated better than her, were not pursued sexually, nor did they have their employment ended as a result of ending a sexual relationship and/or refusing sexual advances, and/or quid pro quo sexual harassment," *id.* at PageID.3.

However, Defendant has not moved for summary judgment on a discriminatory discharge claim or a discrimination claim. Nor does Defendant's motion address the elements of such a claim.

Ordinarily, this would mean that Plaintiff's purported discriminatory discharge claim survives summary judgment. The difficulty is that Counts I and II are pleaded so that it is unclear whether

Plaintiff has asserted a discriminatory discharge claim distinct from any harassment claim. The ambiguity arises in two ways.

First, the factual allegations of Counts I and II sound almost entirely in harassment: that Plaintiff was subjected to unwelcome communication and conduct which created an intimidating, hostile, or offensive work environment. ECF No. 1, PageID.4–6. Moreover, the theory that Plaintiff now advances—that Defendant terminated her, but not the male doctors, upon learning of her workplace relationships—is not clearly articulated in the body of either count.

Second, Counts I and II join two distinct causes of action—sexual harassment and gender discrimination—and fail to distinguish between the two separate kinds of claims, instead mixing them together. This is the type of "kitchen sink pleading" that Federal Rule of Civil Procedure 10(b) is meant to prevent: a plaintiff has a duty "to separate each of her causes of action or claims for relief into separate counts," *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 393 (6th Cir. 2020). In other words, a plaintiff must "separat[e] claims into separate counts ... if more than one claim has been joined in a complaint and separation will facilitate clear presentation." *Brown*, 545 F. App'x at 372 n.2 (citation omitted). Because Plaintiff's discriminatory discharge theory is confusingly intertwined with Plaintiff's harassment theory, the Complaint does not clearly state it as an independent claim.

However, Defendant does not raise these arguments. Nor does Defendant move to dismiss this claim under Federal Rule of Civil Procedure 8(a) or 10(b). Furthermore, the Court is hesitant to dismiss this claim *sua sponte* without adequate adversarial briefing. Thus, because the Complaint could plausibly be read to plead a distinct discrimination claim and because Defendant did not move for summary judgment on such a claim, the Court will permit additional briefing to clarify the matter.

Another court in this district, addressing a similarly duplicative claim (filed by the same Plaintiff's counsel as in this case), required Plaintiff to file a notice either 1) certifying that a distinct cause of action for gender discrimination was brought under the Complaint, or 2) notifying the Court and Defendant that no distinct cause of action was alleged. *See Williams v. Autokiniton*, No. 23-12404, 2026 WL 103979, at *8–9 (E.D. Mich. Jan. 14, 2026) (Behm, J.) (taking identical action at the summary judgment stage when the complaint contained two counts labelled "Gender/Sexual Harassment/Discrimination").

The Court will require the same here. If Plaintiff's counsel certifies that a distinct gender discrimination cause of action was included, the Court will permit Defendant to file a second motion for summary judgment focused solely on any discrimination claim, within 30 days of entry of Plaintiff's notice, not to exceed 12 pages. Any response is also limited to 12 pages, and a reply may not exceed 7 pages.

In the above-cited *Williams* case, Judge Behm warned Plaintiff's counsel that the failure to separate causes of action into distinct counts may be considered forfeiture of undifferentiated claims at summary judgment. *See id.* at *9. That warning is repeated here: if this pleading defect is found in any future complaints by counsel, claims that are insufficiently pled as distinct causes of action will be forfeited.

Accordingly, for the reasons set out above, summary judgment is **GRANTED** as to any gender harassment, sexual harassment, or hostile-work-environment claims contained in Counts I and II. Summary judgment is also **GRANTED** as to Count V.

**2. Counts III and IV**

Counts III and IV bring claims for Retaliation in violation of Title VII and in violation of state law. ECF No. 1, PageID.6–7. Specifically, Plaintiff claims that she "engaged in protected activity when she … resist[ed] a sexual relationship with Drs. Juliani and Jack"; that "Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior, because they were present for the actions in question and/or Plaintiff reported it directly to Defendant's agents"; and that Defendant "took adverse employment actions against Plaintiff, including but not limited to terminating her." *Id.* at PageID.6–7; *id.* at PageID.7–8.

Defendant moves for summary judgment, arguing that (1) Plaintiff cannot prove a *prima facie* case of retaliation and (2) Plaintiff cannot

prove pretext. ECF No. 12-1, PageID.98–101. The Court begins by addressing whether Plaintiff as adduced facts capable of showing a *prima facie* case of retaliation.

At the summary judgment stage, a plaintiff must present either direct or circumstantial evidence to prevail on a retaliation claim. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771–72 (6th Cir. 2018). Where, as here, a plaintiff offers only circumstantial evidence of retaliation, the *McDonnell Douglas/Burdine* burden-shifting framework applies. *Id.* Under this framework, the plaintiff must first make out a *prima facie* case of retaliation. *Id.* at 772. Then, "the burden shifts to the employer to proffer a legitimate, [nonretaliatory] reason for its decision." *Id.* If the employer does so, "the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual." *Id.* (citation modified).

To make a *prima facie* showing of Title VII retaliation or ELCRA retaliation, an employee must show:

> (1) [s]he engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action.

*Laughlin v. City of Cleveland*, 633 F. App'x 312, 315 (6th Cir. 2015); *see Rogers*, 897 F.3d at 771 (stating claims of retaliation under ELCRA and Title VII are reviewed under the same standard).

Defendant argues that "[t]he undisputed facts establish that Plaintiff fails to meet the first, second, and fourth elements of *prima facie* case of retaliation." ECF No. 12-1, PageID.98–99. The Court will begin by addressing whether Plaintiff has shown that she has engaged in a protected activity.

Defendant argues that "[i]n her Complaint, Plaintiff claims that she 'engaged in protected activity (by) … resisting a sexual relationship with Drs. Juliani and Jack.' Ex. A, ¶51. Again, however, Plaintiff disavows this allegation with her later Rule 36 admissions." ECF No. 12-1, PageID.99 (alterations in original). Thus, Defendant argues, "[b]ecause Plaintiff now admits that she did not engage in protected activity, her retaliation claims cannot succeed." *Id.*

Plaintiff responds that "[r]etaliation claims under Title VII are not limited to formal HR complaint and protected activity includes opposing discrimination or participating in proceedings." ECF No. 14, PageID.407 (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561 (6th Cir. 2000)). Aside from this unremarkable statement about the scope of Title VII, Plaintiff does not respond to Defendant's core assertions: that the only protected activity Plaintiff alleges to have engaged in was resisting a sexual relationship with Drs. Juliani and Jack; that Plaintiff explicitly disavows those allegations in her Rule 36 admissions; and that as a result, summary judgment is proper.

The Court agrees with Defendant. Plaintiff alleges that she "engaged in protected activity when she took the following actions, including but not limited to, resisting a sexual relationship with Drs. Juliani and Jack." ECF No. 1, PageID.6; *id.* at PageID.8. Beyond her allegation that she "resist[ed] a sexual relationship with Drs. Juliani and Jack," the Complaint alleges no other protected activity that survives her admissions.

While it is true that the Sixth Circuit has held that resisting a supervisor's sexual advances constitutes protected activity, *Huang v. Ohio State Univ.*, 116 F.4th 541, 562 (6th Cir. 2024) ("to constitute 'protected activity,' we have held it is enough that a plaintiff 'resists' a supervisor's sexual advances"), that is not what happened here, according to Plaintiff's own statements in discovery. Indeed, Plaintiff has explicitly disavowed that she resisted Dr. Jack's or Dr. Juliani's sexual advances. In her responses to Defendant's Requests for Admission, Plaintiff made the following binding admissions:

> REQUEST NO. 10: Admit that you did not resist a sexual relationship with Dr. Juliani.
>
> RESPONSE: Admit
>
> …
>
> REQUEST NO. 11: Admit that you did not resist having a sexual relationship with Dr. Jack.
>
> RESPONSE: Admit

ECF No. 12-7, PageID.245.

Notwithstanding these admissions, Plaintiff maintains that she felt pressured to continue the relationships. ECF No. 14, PageID.399–400. While this may be true, Plaintiff's responses deny that she resisted a sexual relationship with either Dr. Juliani or Dr. Jack. The proof therefore does not create any dispute of fact as to whether she engaged in protected activity by resisting a sexual relationship with them. By her own admission, she did not. Thus, Plaintiff has failed to show that she engaged in protected activity and has thus failed to establish a *prima facie* case of retaliation. *Schelle v. City of Piqua, Ohio*, No. 24-3980, 2025 WL 1592135, at *4 (6th Cir. June 5, 2025) ("Accordingly, Schelle did not engage in protected activity and failed to establish a prima facie Title VII retaliation case.").

At the July 29, 2026 hearing, Plaintiff's counsel argued that Plaintiff's admission that she did not resist a sexual relationship with either doctor is not dispositive, because "'resist[ing]' a supervisor's sexual advances," *Huang*, 116 F.4th at 562, encompasses more conduct than Plaintiff's admission disclaims. Specifically, Plaintiff's counsel pointed to Plaintiff's rejection of Dr. Juliani's request for a relationship. Counsel characterized that rejection as resistance to a sexual advance under Sixth Circuit case law. This new theory is not articulated in Plaintiff's response brief, nor has Plaintiff provided an evidentiary basis for the allegation that Plaintiff rejected Dr. Juliani's request for a relationship. Even

crediting that account, however, the alleged rejection would not constitute protected activity. Title VII's opposition clause reaches only opposition to "an unlawful employment practice," 42 U.S.C.A. § 2000e-3, and a request to enter a relationship is not such a practice.

Thus, Defendant's motion for summary judgment is **GRANTED** as to Counts III and IV.[4]

### 3. Count VII

Count VII brings a claim for Wrongful Discharge in violation of Michigan public policy. ECF No. 1, PageID.10.

Specifically, Plaintiff alleges that her "discharge came as the result of her ending her relationship with Defendant's agent, Dr. Juliani and refusing a sexual relationship with another of Defendant's agent, Dr. Jack." *Id.*

Defendant argues that "a public policy wrongful discharge claim cannot be maintained where a statutory remedy exists." ECF No. 12-1, PageID.103. Because "[b]oth Title VII and ELCRA provide protections against employer discrimination and retaliation, and as such they are an employee's exclusive remedy for these alleged wrongs … summary judgment is warranted on Count VII." *Id.*

Plaintiff responds that while she recognizes that

---

[4] Because the Court finds that Plaintiff has not proven a prima facie case of retaliation, the Court need not address Defendant's second argument, that Plaintiff cannot prove pretext.

> Michigan law limits wrongful discharge claims where statutes provide remedies …, given the factual disputes surrounding Defendant's reasons for termination and Defendant's own admissions regarding its at-will judgment and lack of investigation, summary judgment should be denied at minimum until the Court determines the precise scope of Plaintiff's statutory claims and whether the tort claim is duplicative.

ECF No. 14, PageID.409.

Defendant replies that "[t]his contention is frivolous." ECF No. 16, PageID.615.

The Court agrees with Defendant.

"A public policy wrongful discharge claim is a common law claim that is available only where no statutory retaliation claim exists." *Kamal v. Ford Motor Co.*, No. 24-12073, 2025 WL 1691193, at *3 (E.D. Mich. June 16, 2025) (Michelson, J.). Accordingly, "where there is an applicable statutory prohibition against discharge in retaliation for the conduct at issue, the employee's exclusive remedy is to bring a claim of retaliation under the applicable statute." *Id.* (cleaned up).

Here, as Plaintiff explicitly concedes, ECF No. 14, PageID.409, both Title VII and ELCRA provide protections against employer retaliation. *See* Mich. Comp. Laws § 37.2701(a); 42 U.S.C. § 2000e-3(a); *see Kamal*, 2025 WL 1691193, at *3. Thus, Plaintiff must bring any retaliation claims under Title VII or ELCRA. *See id.* However, she "cannot also

repackage [her] allegations to form a public policy wrongful discharge claim." *Id.* Accordingly, Count VII cannot stand.

Plaintiff's argument that "summary judgment should be denied at minimum until the Court determines the precise scope of Plaintiff's statutory claims and whether the tort claim is duplicative," ECF No. 14, PageID.409, does not change this conclusion. In short, whether Title VII and ELCRA provide statutory remedies for Plaintiff's retaliation claim does not depend on whether Plaintiff succeeds on her claims under those statutes, or on the scope of those claims. *See Lee v. Dana Inc.*, No. 20-11282, 2024 WL 4373754, at *10 (E.D. Mich. Sept. 30, 2024) (Hood, J.) (granting summary judgment to defendant on plaintiff's Title VII and ELCRA retaliation claims and then granting summary judgment on plaintiff's Michigan public policy claim because statutory remedies existed), *aff'd*, No. 24-1964, 2025 WL 1684347 (6th Cir. June 16, 2025); *Sulieman v. St. John Hosp. & Med. Ctr.*, No. 07-15426, 2009 WL 10680532, at *7 (E.D. Mich. June 26, 2009) (Friedman, J.) (same).

Accordingly, summary judgment is **GRANTED** as to Count VII.

## IV. CONCLUSION

For the reasons stated, Defendant's motion for summary judgment (ECF No. 12) is hereby **GRANTED** as to Counts III, IV, V, and VII. (There is no Count VI).

As to Counts I and II, the motion is likewise **GRANTED** as to Plaintiff's harassment, sexual harassment, or hostile-work-environment claims.

It is further **ORDERED** that **PLAINTIFF SHALL HAVE SEVEN (7) DAYS** from the date of this Order, that is, by August 7, 2026, to file a notice either 1) certifying that distinct causes of action for gender discrimination were brought under Counts I and/or II, in which case Defendant may file a second motion for summary judgment (subject to the page limits set forth above) **WITHIN THIRTY (30) DAYS OF ENTRY OF PLAINTIFF'S NOTICE**, or 2) notifying the Court and Defendant that no distinct cause of action for gender discrimination was alleged, and in that case the Court will promptly enter judgment in favor of Defendant as to gender discrimination, consistent with this opinion. *See Williams*, 2026 WL 103979, at *15.

**SO ORDERED.**

Dated: July 31, 2026

s/Terrence G. Berg

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE